IN THE UNITED STATES DISTRICT FOR
THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **CONNOR** and **AMANDA ELLIOT,** Individually and as next friend of **N.E.,** their minor child, | |
| Plaintiffs | **NO. 1:19-CV-00427-LY** |
| vs. | |
| **UNITED STATES OF AMERICA,** | |
| Defendant | |

GUARDIAN AD LITEM RECOMMENDATION
TO SETTLE CASE ON BEHALF OF
N.E., A MINOR

Chip Evans was appointed by the Court as Guardian Ad Litem for N.E., minor child, and

files this recommendation that the Court approve the settlement on his behalf, and would show the

Court the following:

**Summary of the Incident**

1. The genesis of this lawsuit was the birth of N.E., who is a four-year-old male diagnosed

with cerebral palsy, Hypoxic Ischemic Encephalopathy, and Microcephaly. He was born

on November 24th, 2015, by vaginal delivery at Darnall Army Community Hospital.

N.E. was admitted and treated post-delivery spending approximately one month in the

NICU and discharged from McLean Children's Medical Center dated December 24,

2015.

2.  N.E. was born with significantly depressed APGAR scores. He was transferred to Baylor Scott and White Hospital in Temple, Texas because of concern over hypoxic brain injury. Baylor S & W confirmed a hypoxic brain injury (HIE) with intraventricular hemorrhage. A brain MRI showed multiple small areas of inter cranial hemorrhage, intra ventricular hemorrhage, and sub arachnoid hemorrhage. On March 21, 2016, N.E. was admitted for possible nonconvulsive status. He had an EEG performed which showed no evidence of seizure activity. An EEG completed on October 31, 2016, demonstrated as normal. Subsequently, the family moved to Kentucky. N.E.'s healthcare has all been through Cincinnati Children's Hospital since that time. He has been unable to tolerate oral feedings due to complications of aspiration of fluids. He gets all his feedings bolus fed every three hours during the day. He is diagnosed with hypotonic, global developmental delay, hypoxic ischemic encephalopathy, neonatal onset, moderate, intra ventricular hemorrhage, impaired motor control, kernicterus, muscle weakness (generalized), poor weight gain in child, decreased functional mobility and endurance, lack of coordination, other speech disturbance, dystonia, spastic quadriplegic, cerebral palsy. N.E. continues with physical therapy (PT), occupational therapy (OT) and Speech-Language Pathology (SLP) through Perlman Center.

3.  Since N.E. was born on November 24, 2015, he was admitted and treated post-delivery spending approximately a month in the NICU and discharged from McLean Children's Medical Center. N.E. underwent outpatient care with several specialists scheduled through Cerebral Palsy Clinic with a multi-disciplinary team. Subsequently, the family moved to Kentucky to be closer to family for support. N.E.'s healthcare since has all been through Cincinnati Children's Hospital. He is followed there by pediatric neurology as

2

well as physical medicine and rehabilitation (PM&R), a gastroenterologist and is also followed by a general surgeon for an inguinal hernia repair. N.E. sees a dentist for his teeth cleaning. N.E. continues to attend therapies including PT, OT and SLP. He currently attends aqua therapy for approximately 90 minutes a week. Per the records reviewed he was getting physical therapy twice a week. Speech-Language Pathology (SLP) 1-2 times a week and OT was 1-2 times a week. A virtual home assessment completed on June 3, 2020, indicated that no further surgeries or hospitalizations have occurred in the past year.

4.  According to medical records, and the virtual home assessment, no future surgery is recommended by N.E.'s treating physicians. N.E. still needs and will continue to need constant care.  He will not be able to be completely independent and do things on his own.

## SETTLEMENT & DISBURSEMENT

5.  Plaintiffs' case settled for $8,000,000, subject to the Court's approval.  Plaintiff Connor Elliott is the biological father of N.E., and Amanda Elliott is the biological mother. The settlement is being apportioned so that half of the funds are going into a Medical Reversionary Trust and the remaining half are being used to satisfy fees and expenses. From the upfront cash, $100,000 will be paid directly to the parents for their individual claim. The remainder of the upfront cash will be placed in a Special Needs Trust for the benefit of the minor. The net to the family after fees and costs will be: **$5,857,451.56** The breakdown is as follows:

Total Settlement: $8,000,000

Reversionary Medical Trust Deposit: $4,000,000

Attorney Fee: $2,000,000

Litigation Costs: $142,548.44

Nolan & Connor Elliot Individual Disbursement: $100,000.00

Special Needs Trust Deposit: $1,757,451.56

## Analysis

6. I have spoken to Connor and Amanda who stated that they fully understand the settlement for N.E.. They fully understand that they do not have to settle any of their claims, and that they could proceed to trial. They understand they do not have a right to a jury trial in a FTCA action. They understand that the Court might award their child more money than they are settling for, but they further understand that the Court may award less money, no money, or something very close to this settlement. They understand that by entering into this settlement, they are waiving not only their own right to a trial, but that they are also waiving N.E.'s right to a trial. They understand that neither they, nor N.E. can ever come back against this Defendant for more money for anything resulting from this incident once the Court approves this settlement. They understand the finality of their decision and this settlement. They agree with the settlement and distribution of funds and believe both to be in their child's best interest.

7. Trial in this matter poses a risk for Plaintiffs given the amount of the settlement offer and the proposed distribution. The additional fees and expenses would negate anything but a

substantial gain and perhaps result in a net recovery to the minor of less than the current

settlement.  In order to net the same amounts, a verdict would need to be appreciably higher

than the settlement to net the same result, given the anticipated increase in fees and

expenses. I believe that the likelihood of an appreciably higher verdict in this case is

minimal.  The family wants the case closed and is ready to move on.

8.  The division of the settlement is also appropriate.  The attorney's fees and expenses are

both reasonable. *See* 28 U.S.C. § 2678.

9.  Based on the foregoing, I believe the proposed settlements are in N.E.'s best interest.

Further, I believe that the proposed settlement breakdown is fair and that the structures are

appropriate for N.E.   Based on the foregoing, I would respectfully request that this

Honorable Court enter a Final Judgment approving the proposed settlement and breakdown

including the attorney's fees, case expenses and structures.


## Review


10.  In order to analyze the settlement in light of the best interest of N.E., I performed the

following:

a.  Review of pleadings in the matter;

b.  Review of medical history of N.E.;

c.  Review of life care plan for N.E.;

d.  Had several phone conversations with counsel for Plaintiff;

e.  Reviewed the Stipulation of the Government;

f.  Reviewed the proposed disbursement;

g.  Had a phone interview with Amanda and Connor Elliot;

h.  Reviewed the draft Trust documents;

i.  Drafted this Report; and

j.   Will attend any Final Hearing(s) on the matter as the Court deems necessary.

k.   If the Court should hold any in-person hearing, it is my recommendation that the family should not be required to attend or attend via tele-conference or other remote technology. N.E. and his family live out-of-state and N.E.'s disabilities make such travel a risk for him and combined with the need for constant supervision, it would be in the best interest of N.E. not to travel for any final hearing.

## Attorney's Fee & Expense

11. My fee to date totals $3,000.00 and my expenses total $0.00.  I hereby request a Guardian Ad Litem fee of $3,000 payable by Plaintiffs.

Respectful Submitted:

By: /s/ Chip Evans_____

Walter P. "Chip" Evans, IV
TX State Bar No. 24002068

Evans and Herlihy Law Firm
4407 Bee Caves Road, Suite 611
Austin, TX 78746
(512) 732-2727 Tel
(512) 732-2731 Fax
chip@evanstxlaw.com

## CERTIFICATE OF SERVICE

By my signature above, I certify that a copy of this pleading, Plaintiffs' Motion, has been sent to the following on July 14, 2021 via the Court's CM/ECF notice system.

Kartik Venguswamy
U.S. Attorney's Office
Western District of Texas
903 San Jacinto Blvd., Suite 334
Austin, TX 78701
512-370-1294
kartik.venguswamy2@usdoj.gov

JAMAL K. ALSAFFAR,
jalsaffar@nationaltriallaw.com
Texas State Bar #24027193
TOM JACOB,
tjacob@nationaltriallaw.com
Texas State Bar #24069981

WHITEHURST, HARKNESS,
BREES, CHENG, ALSAFFAR,
HIGGINBOTHAM, & JACOB P.L.L.C.
7500 Rialto Blvd,
Bldg. Two, Ste 250
Austin, TX 78735
(512) 476-4346 (o)
(512) 467-4400 (f)

JESSE M. REITER, pro hac vice
jreiter@abclawcenters.com
Michigan State Bar #P40692
ANNE RANDALL, pro hac vice
arandall@abclawcenters.com
Michigan State Bar #P36842

REITER & WALSH, P.C.
122 Concord Road
Bloomfield Hills, MI 48304
(248) 593-5100 (o)
(248) 593-5108 (f)